# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| GLENN H. WHITE, <br>          Appellant, | DOCKET NUMBER <br> SF-1221-22-0139-R-1 |
|       v. | |
| DEPARTMENT OF HOMELAND <br>      SECURITY, <br>          Agency. | DATE:  May 3, 2024 |

## THIS ORDER IS NONPRECEDENTIAL[1]

Morris E. Fischer, Esquire, Silver Spring, Maryland, for the appellant.

Cary E. Zuk, Esquire, San Francisco, California, for the agency.

Molly Cross Surhoff, Esquire, Centennial, Colorado, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

### REMAND ORDER

The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction.  On February 14, 2024, we granted the appellant's unopposed motion to withdraw his petition for review.  We hereby REOPEN this petition for review on our motion,

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  See 5 C.F.R. § 1201.117(c).

pursuant to 5 U.S.C. § 7701(e)(1); *see also Kling v. Department of Justice*, 2 M.S.P.R. 464, 468 (1980) (recognizing that the authorization of section 7701(e) for the Board to reopen cases on its own motion, without the necessity of a petition for review by any party or the Director of the Office of Personnel Management, demonstrates a congressional intent to vest ultimate responsibility for all Board adjudicative functions in the Board itself).

For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the appeal to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

The appellant is employed as a GS-13 Criminal Investigator with the agency's Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) division in Honolulu, Hawaii. *White v. Department of Homeland Security*, MSPB Docket No. SF-1221-22-0139-W-1, Initial Appeal File (IAF), Tab 1 at 3, Tab 10 at 27, 49. According to the appellant, in 2017 his close colleague filed a complaint against the Acting Deputy Special Agent in Charge (SAC). IAF, Tab 1 at 10. Then, in April or May 2018, the appellant made an abuse of position complaint against another individual, which also implicated the Acting Deputy SAC. *Id*.

In or about January 2020, the agency selected a then-Special Agent for a vacant Group Supervisor (GS) position in the HSI's Public Safety Group in Honolulu. IAF, Tab 12 at 30. According to the appellant, in February 2020, four employees, including the appellant, complained to the Assistant Special Agent in Charge (ASAC) about the Acting Deputy SAC's "violations of hiring and/or promotion practices" concerning the GS selection. IAF, Tab 10 at 10, 49. Specifically, the appellant alleged that the Public Safety Group GS "shouldn't have been hired and was only there because of her close relationship with [the National Security Group GS]." IAF, Tab 10 at 10. The complaint also concerned

the alleged "toxic morale," "fraternization," the preferential treatment of some employees in the office, and the "close personal relationship" between the Acting Deputy SAC, the Public Safety Group GS, and the National Security Group GS. *Id*. This complaint appears to have been verbal. IAF, Tab 12 at 34.

On July 3, 2020, the appellant verbally submitted a complaint to ICE's Office of Professional Responsibility (OPR) Joint Intake Center regarding alleged "nepotism, retaliation, waste, fraud and abuse" at the HSI Honolulu, and named the Acting Deputy SAC as the subject of the complaint.[2] IAF, Tab 10 at 55, Tab 12 at 158-62. He appears to have memorialized that conversation on July 4, 2020, when he followed up with a written complaint to OPR accusing the Acting Deputy SAC, the Public Safety Group GS, and the National Security Group GS, among others, of engaging in "favoritism, nepotism and implicit bias." IAF, Tab 10 at 49, 55-60. According to the agency, on July 23, 2020, OPR received two additional complaints from the appellant, again alleging nepotism, retaliation, waste, and fraud and abuse, and naming the Public Safety Group GS and the National Security Group GS as the subjects of his allegations. IAF, Tab 12 at 240-45, 289-94.

The appellant alleges that, as a result of these communications, he was subjected to retaliation, including the following: in or about February or March 2020, the Acting Deputy SAC refused to investigate and provide surveillance following the vandalism and shooting of his private property, IAF, Tab 10 at 15, 52; during a March 2, 2020 meeting that the Public Safety Group GS held with the Public Safety Group, she became hostile toward the appellant and targeted him specifically for "going to management" about her, *id*. at 52, 58; shortly

---

[2] In its response to the jurisdictional order, the agency submitted copies of the investigative findings of the appellant's July 3-4 and 23, 2020 OPR complaints. IAF, Tab 12 at 158-62, 240-45, 289-94. We have considered these submissions here merely to clarify background information regarding the appellant's disclosures and activities, and not to weigh the evidence. *Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1368-69 (Fed. Cir. 2020) (holding that in determining if an appellant has made nonfrivolous allegations, the Board must consider only his allegations and not the agency's contrary evidence or view of the evidence).

thereafter, upon learning that the appellant had "applied for disability" through the Department of Veterans Affairs, the Public Safety Group GS told the appellant something to the effect of "you better not tell anyone else you're applying for disability or you're [going to] lose your job," *id*.; in April 2020, the appellant was excluded from the Group Rotation list and transferred from the Public Safety Group to the National Security Group, resulting in the diminution of his promotion potential, *id*. at 15-16, 52; the Public Safety Group GS and the National Security Group GS subjected the appellant to a hostile work environment, including forcing him to pursue a meritless investigation which could have resulted in damage to his career and giving the appellant non-mission critical tasks, like cleaning out case files, while others were permitted to telework, *id*. at 15-17, 52-53; on July 3, 2020, the Public Safety Group GS and the National Security Group GS improperly attempted to have him report to unscheduled duty to assist the Border Enforcement Security Task Force, allegedly in violation of Law Enforcement Availability Pay regulations, *id*. at 17, 53; on July 6, 2020, the National Security Group GS denied the appellant's annual leave request and then required him to submit proof of his court appearance before she would approve it, *id*. at 17-18, Tab 13 at 4; on or about July 8, 2020, the National Security Group GS accused the appellant of using his expired HSI passport "for the purposes of traveling under the Coast Guard umbrella" and subjected him to an investigation, IAF, Tab 10 at 17, 43-44, 53-54, Tab 12 at 95; in August 2020, the National Security Group GS required the appellant to turn in his credentials while on active duty, resulting in the loss of his access to the agency's intranet and promotional opportunities, IAF, Tab 10 at 18, 52; and in December 2020, while on active duty, the National Security Group GS denied him access to the HSI parking lot, *id*. at 18, 52, Tab 11 at 4.

The appellant filed the underlying whistleblower reprisal complaint with the Office of Special Counsel (OSC) on November 5, 2020. IAF, Tab 10 at 22-60; Petition for Review (PFR) File, Tab 1 at 7. OSC issued him a final

determination letter in October 2021 and closed its investigation into his complaint. IAF, Tab 10 at 62.

The appellant then filed this IRA appeal with the Board. IAF, Tab 1 at 3, 5. With his appeal, he filed a copy of OSC's October 12, 2021 notice that it was closing his November 5, 2020 complaint into an alleged June 2020 disclosure of improper hiring practices. *Id*. at 15. The administrative judge thereafter issued an order setting forth the appellant's burden to establish jurisdiction over his appeal. IAF, Tab 3. The appellant submitted a response, providing information regarding the February and July 2020 disclosures and/or activities and the personnel actions at issue. IAF, Tab 10 at 4-20. He also attached to his response a copy of his OSC complaint form and a written summary of his disclosures and/or activities and the personnel actions at issue, and again provided a copy of OSC's final determination letter. *Id*. at 22-62. The agency responded to the appellant's submission. IAF, Tabs 12-13.

The administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction. IAF, Tab 14, Initial Decision (ID) at 1, 8. He found that because OSC's final determination letter referred only to a June 2020 disclosure and the appellant had not submitted any information about a June 2020 disclosure, including to whom it may have been made, the appellant had failed to exhaust his administrative remedies before OSC concerning his remaining disclosures. ID at 6-7. The administrative judge also concluded that the appellant had failed to nonfrivolously allege that he made a disclosure in June 2020 that was a contributing factor in a personnel action. ID at 8.

The appellant has filed a petition for review of the initial decision. PFR File, Tabs 1-2. The agency has filed a response. PFR File, Tab 4.

## DISCUSSION OF ARGUMENTS ON REVIEW

The Board has jurisdiction over an IRA appeal if the appellant has exhausted his remedies before OSC and makes nonfrivolous allegations that

(1) he made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in a protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Gabel v. Department of Veterans Affairs*, 2023 MSPB 4, ¶ 5.

The administrative judge erred in finding that the appellant failed to exhaust his alleged perceived or actual disclosures and/or activities and personnel actions with OSC.

The administrative judge found that the appellant failed to exhaust his disclosures and personnel actions with OSC. ID at 7-8. In so finding, he relied on OSC's final determination letter, and specifically declined to rely on the appellant's OSC complaint or its attachments because of what he perceived as a "disconnect" between the appellant's complaint and the final determination letter, as well as the appellant's failure to correct OSC's close out notice. ID at 7. On review, the appellant argues that the administrative judge erred in requiring him to prove that the OSC complaint that he provided with his appeal was the same complaint that formed the basis of OSC's investigation and in requiring him to correct OSC's misinterpretation of his claims. PFR File, Tab 1 at 4-6. We agree with the appellant.

To satisfy the exhaustion requirement of 5 U.S.C. § 1214(a)(3), an appellant must have provided OSC with a sufficient basis to pursue an investigation into his allegations of whistleblower reprisal. *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 7; *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10. Generally, exhaustion can be demonstrated through the appellant's OSC complaint, evidence the original complaint was amended (including but not limited to OSC's determination letter and other letters from OSC referencing any amended allegations), and the appellant's written responses to OSC referencing the amended allegations. *Skarada*, 2022 MSPB 17, ¶ 7; *Mason v. Department of Homeland Security*,

116 M.S.P.R. 135, ¶ 8 (2011). Alternatively, exhaustion may be proven through other sufficiently reliable evidence, such as an affidavit or declaration attesting that the appellant raised with OSC the substance of the facts in his appeal. *Skarada*, 2022 MSPB 17, ¶ 7; *Chambers*, 2022 MSPB 8, ¶ 11. Contrary to the administrative judge's reasoning here, the Board has found that an appellant was not statutorily required to respond to OSC's preliminary determination letter regarding his complaint in order to prove that he exhausted his administrative remedies with OSC. *Chambers*, 2022 MSPB 8, ¶¶ 6-8. Therefore, the administrative judge's determination that the appellant could not establish jurisdiction on this basis was in error.

With the appellant's response to the administrative judge's jurisdictional order, he provided a copy of his OSC complaint and the summary of his claims that he attached to his OSC complaint. IAF, Tab 10 at 22-56. Based on our review of these documents, we find that he exhausted his allegation that the agency believed he was the source of his colleague's 2017 complaint against the Acting Deputy SAC, and also exhausted his April/May 2018, February 2020, and July 3-4, 2020 disclosures and/or protected activity, as well as the alleged personnel actions listed above. The appellant's counsel asserts that he provided this information to OSC and certified to the truthfulness of the statements in the appellant's initial appeal and his jurisdictional reply. IAF, Tab 1 at 5, 8; Tab 10 at 3, 20. Moreover, on review, the appellant's counsel submits an affidavit from his law clerk certifying that she filed the OSC complaint and the summary of disclosures and personnel actions with OSC. PFR File, Tab 1 at 7 (citing to IAF, Tab 10 at 22-60).[3]

---

[3] Under 5 C.F.R. § 1201.115, the Board will not consider evidence submitted for the first time with the petition for review absent a showing that it was unavailable before the record was closed despite the party's due diligence. *Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980). Nevertheless, we have considered all of the evidence in the record that relates to the Board's jurisdiction, regardless of when it was submitted. *See Stoglin v. Department of the Air Force*, 123 M.S.P.R. 163, ¶ 7 (2015) (explaining that the issue of Board jurisdiction is always before the Board and may be raised at any time), *aff'd per curiam*, 640 F. App'x 864 (Fed. Cir. 2016).

The agency stated that on July 23, 2020, OPR received two additional complaints from the appellant alleging nepotism, retaliation, waste, and fraud and abuse; however, the appellant did not raise any July 23, 2020 complaints with OSC. IAF, Tab 10 at 32, Tab 12 at 240-45, 289-94. Although the administrative judge addressed the July 23, 2020 complaints in his initial decision, he appears to have accurately determined that they concern the same subject matter as the appellant's July 4, 2020 complaint. ID at 3; *compare* IAF, Tab 10 at 55-60, *with* IAF, Tab 12 at 240-45, 289-94. The appellant, who has been represented by counsel throughout this appeal, did not list the 2017, 2018, or July 23, 2020 complaints as actual or perceived disclosures or protected activity in his jurisdictional response, nor did he allege that he was subjected to retaliation as a result of these complaints. IAF, Tab 10 at 6-15. Instead, he specifically stated that he was subjected to retaliation "[a]s a result of the [a]ppellant's actual and perceived complaints in February, 2020, and/or his July 3, 2020 written complaint to OPR." *Id*. at 14-15. Therefore, we decline to address the 2017, 2018, or July 23, 2020 complaints as separate disclosures or activities.

Accordingly, we find that the appellant established by preponderant evidence that he exhausted his administrative remedy with OSC regarding the February 2020 and July 3-4, 2020 disclosures and/or activities, as well as all the alleged personnel actions.[4]

The appellant nonfrivolously alleged that he made a protected disclosure under 5 U.S.C. § 2302(b)(8) and engaged in protected activity under 5 U.S.C. § 2302(b)(9).

*The appellant nonfrivolously alleged that he made a protected disclosure in February 2020.*

As set forth above, the appellant asserted that in February 2020 he and several colleagues verbally complained to the ASAC about the Acting Deputy

---

[4] Because the appellant raised the 2017 and 2018 complaints with OSC, to the extent that he wishes to include those complaints as protected disclosures or activities, he should raise those claims on remand, consistent with the administrative judge's orders.

SAC's hiring practices surrounding the selection for the Public Safety Group GS position, the "fraternization," "toxic morale in the office," the preferential treatment of some employees, and the close relationship between the Acting Deputy SAC, the Public Safety Group GS, and the National Security Group GS. IAF, Tab 10 at 10, 49. Because the administrative judge improperly limited the appellant's exhausted disclosures to a June 2020 disclosure,[5] he did not address whether the appellant made a nonfrivolous allegation of a protected disclosure with respect to this complaint. ID at 8. We find that he did.

A protected disclosure is one that an appellant reasonably believes evidences any violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(b)(8); *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 5 & n.3 (2013). The proper test for determining whether an employee had a reasonable belief that his disclosures were protected is whether a disinterested observer in his position with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions evidenced any of the conditions set forth in 5 U.S.C. § 2302(b)(8). *Mudd*, 120 M.S.P.R. 365, ¶¶ 5, 8. Any doubt or ambiguity as to whether an appellant raised a nonfrivolous allegation of a reasonable belief should be resolved in favor of a finding that jurisdiction exists. *Id.*, ¶ 8.

The appellant alleged that in February 2020, prior to the Public Safety Group GS's entry on duty in Honolulu, he and three other employees complained to the ASAC about the Acting Deputy SAC, the Public Safety Group GS, and the National Security Group GS. IAF, Tab 10 at 10, 49, 58. During this meeting, they allegedly complained about hiring improprieties surrounding the selection for the Public Safety Group GS position, including that the Public Safety Group GS should not have been hired and was "only there because of her close

---

[5] On review, the parties do not dispute the administrative judge's determination that the Board lacks jurisdiction over a June 2020 disclosure. We decline to revisit that finding here.

relationship with [the National Security Group GS]." IAF, Tab 10 at 10, 49. It is undisputed that the Acting Deputy SAC was the selecting official for the Public Safety Group GS position. IAF, Tab 12 at 30, 231. They also complained about the "fraternization," "toxic morale in the office," the preferential treatment of some employees, and the close relationship between the Acting Deputy SAC, the Public Safety Group GS, and the National Security Group GS. IAF, Tab 10 at 10, 49. The appellant also alleged that they informed the ASAC of "the history/circumstances in which the Public Safety Group GS had come to SAC Honolulu." *Id.* at 58.

The appellant's assertions regarding the "history" of close association and "fraternization" is somewhat lacking in detail; however, the appellant elaborated on this point elsewhere in his submission to OSC and in his July 4, 2020 complaint to OPR. IAF, Tab 10 at 49-50, 57. He claimed that, since 2017, the Public Safety Group GS, who was then a Special Agent, was given favorable treatment ahead of her selection and frequently appeared in Hawaii, despite being stationed elsewhere. *Id*. at 49. For instance, she received a special temporary duty assignment to organize a file room in Honolulu while awaiting a transfer to South Africa, instead of remaining in Houston where she was stationed. *Id*. at 49, 57. In 2017, the then-Special Agent also received a cash award for working on a closed case file, despite not being assigned to Honolulu. *Id*. In the fall of 2019, despite being stationed in South Africa, she attended the Hawaii State Law Enforcement Officers Association Convention, during which she allegedly stated something to the effect that "[the] GS at SAC–Honolulu was hers and that she just had to go through formalities." *Id.* at 49-50, 57. When she interviewed for the Public Safety Group GS position, even though it is standard procedure for the individual being interviewed to interview at the closest physical office, which in her case was South Africa, she was given the special privilege of interviewing for the position in person in Honolulu. *Id*. at 50, 57. The appellant further claimed that shortly after her selection, the Acting Deputy SAC and the Public Safety

Group GS were observed on Government property in an intoxicated state and drove away in a vehicle, leaving the HSI office gate open. *Id*. at 8, 10, 57-58. The agency acknowledges that this conversation took place and that, on February 28, 2020, the ASAC informed the Public Safety Group GS that several agents complained to him about her appointment to the Public Safety Group GS position. IAF, Tab 12 at 7.

We find that the appellant has nonfrivolously alleged that he reasonably believed that, in notifying the ASAC that the Acting Deputy SAC was engaging in hiring improprieties by granting her friend special privileges and selecting her to the position based on their friendship without regard to merit, he had disclosed a violation of law, rule, or regulation and/or an abuse of authority regarding the agency's selection process. The Board has previously held that claims concerning disclosures about hiring and selection improprieties, including giving preferential treatment to friends, may constitute nonfrivolous allegations of protected disclosures that statutory provisions have been violated. *See Ormond v. Department of Justice*, 118 M.S.P.R. 337, ¶¶ 8-10 (2012) (finding the appellant nonfrivolously alleged that he made a protected disclosure when he reported that a manager told a human resource officer that an applicant should be selected for a position, and the human resources officer then referred only that applicant for an interview and he was selected over two other applicants who were not interviewed); *see also McDonnell v. Department of Agriculture*, 108 M.S.P.R. 443, ¶¶ 10-13 (2008) (finding that the appellant made a nonfrivolous allegation that she made a protected disclosure by reporting that her supervisor improperly cancelled a vacancy announcement and reassigned an unqualified employee into the position at the request of a director and as a favor to the employee's friend, which could constitute a prohibited personnel practice).[6]

---

[6] The appellant argues below that if his February 2020 complaint did not constitute a protected disclosure, at the very least he was perceived as a whistleblower, based on the fact that the Public Safety Group GS stated during the March 2020 Public Safety Group meeting that she knew he had gone to management and complained about her. IAF,

*The appellant nonfrivolously alleged that he engaged in protected activity with regard to his July 3 and 4, 2020 complaint to the agency's OPR.*

As set forth above, on July 3 and 4, 2020, the appellant alleged that he spoke to and later submitted a written complaint to the agency's OPR alleging a "continued pattern and practice of favoritism, nepotism and implicit bias" as well as retaliation following his February 2020 disclosure. IAF, Tab 10 at 55-60. The administrative judge did not address whether the appellant engaged in protected activity with respect to this complaint. ID at 8. We find that he did.

Prior to December 12, 2017, it was a protected activity under 5 U.S.C. § 2302(b)(9)(C) to "cooperat[e] with or disclos[e] information to the Inspector General of an agency, or the Special Counsel, in accordance with applicable provisions of law." *Edwards v. Department of Labor*, 2022 MSPB 9, ¶ 29 (2022), *aff'd*, No. 2022-1967, 2023 WL 4398002 (Fed. Cir. July 7, 2023). Section 1097(c)(1) of the National Defense Authorization Act of 2018 (NDAA) amended 5 U.S.C. § 2302(b)(9)(C) to provide that, in addition to the Inspector General of an agency or the Special Counsel, a disclosure to "any other component responsible for internal investigation or review" is also protected. *Edwards*, 2022 MSPB 9, ¶ 29. Although the appellant's OPR complaint and alleged personnel actions occurred after the December 12, 2017 enactment date of the NDAA, neither the administrative judge nor the parties addressed whether the appellant's OPR complaint falls within the expanded scope of this subsection. We do so here.

OPR is charged with, among other things, conducting independent reviews of ICE programs and operations, and receiving and impartially investigating

---

Tab 10 at 14. The administrative judge did not address this argument in his decision, and the appellant did not raise it on review. A typical IRA appeal involves a claim that the appellant made a protected disclosure or engaged in protected activity. *King v. Department of the Army*, 116 M.S.P.R. 689, ¶ 6 (2011). However, an appellant can also establish jurisdiction on the basis that he was perceived as a whistleblower, even if he did not make a protected disclosure. *Id.* Because we have determined that the appellant nonfrivolously alleged that he made a protected disclosure with respect to the February 2020 complaint, we need not consider this alternative argument.

allegations of serious employee and contractor misconduct, as well as internal and external threats against ICE personnel and facilities. Department of Homeland Security, ICE, OPR, *Who We Are*, https://www.ice.gov/about-ice/opr (last visited May 3, 2024). On July 3, 2020, well after the enactment of the 2018 NDAA, the appellant submitted a complaint to OPR containing allegations of prohibited personnel practices and whistleblower reprisal. IAF, Tab 12 at 158-62. OPR conducted an internal investigation and review of the appellant's allegations and determined that there was insufficient evidence to support the appellant's claims. *Id*. We find, based on its stated mission and its acceptance and review of the appellant's claims, that OPR is an agency component "responsible for internal investigation and review." 5 U.S.C. § 2302(b)(9)(C). Thus, we find that the appellant nonfrivolously alleged that his OPR complaint constitutes protected activity.

The appellant nonfrivolously alleged that his February 2020 disclosure was a contributing factor in his transfer to the National Security Group.

The administrative judge did not make findings as to whether the appellant nonfrivolously alleged that either the February 2020 disclosure or the July 2020 protected activity was a contributing factor in a personnel action. An appellant's protected activity is a contributing factor if it in any way affects an agency's decision to take, or fail to take, a personnel action. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 14 (2012). One way an appellant may establish the contributing factor criterion is the knowledge/timing test, under which he submits evidence showing that the official taking the personnel action knew of the disclosure or activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or activity was a contributing factor in the personnel action.[7] *Pridgen v. Office of*

---

[7] If an appellant has failed to satisfy the knowledge/timing test, the Board will consider whether the contributing factor element has been met based on other evidence, such as the strength or weakness of the agency's reasons for taking the action, whether the whistleblowing was personally directed at the proposing or deciding officials, and

*Management and Budget*, 2022 MSPB 31, ¶ 63. The Board has held that a personnel action taken within approximately 1 to 2 years of an appellant's disclosures or activity satisfies the timing portion of the knowledge/timing test. *Id.*

The appellant alleged that his February 2020 complaint to the ASAC caused the agency to transfer him from the Public Safety Group to the National Security Group in April or May 2020. IAF, Tab 10 at 14-15, 52. The agency agrees that the appellant was transferred to the National Security Group following his disclosure. IAF, Tab 12 at 8. A transfer is a personnel action. 5 U.S.C. § 2302(a)(2)(A)(iv). Therefore, the appellant's allegations are sufficient to meet his jurisdictional burden as to the timing prong of the knowledge/timing test as it concerns his transfer.

We also conclude that the appellant nonfrivolously alleged that one of the individuals involved in the decision to transfer him had knowledge of his February 2020 disclosure. Specifically, the appellant made the February 2020 disclosure to the ASAC, who, according to the Acting Deputy ASAC, recommended the appellant's transfer from the Public Safety Group to the National Security Group, which she ultimately approved. IAF, Tab 10 at 10, Tab 12 at 187. Thus, the appellant has made nonfrivolous allegations regarding the knowledge prong of the knowledge/timing test.

In cases such as this one, when the appellant has alleged that multiple personnel actions were retaliatory, the Board has jurisdiction when the appellant exhausts his administrative remedies before OSC and makes a nonfrivolous allegation that at least one alleged personnel action was taken in reprisal for at least one alleged protected disclosure. *Skarada*, 2022 MSPB 17, ¶ 13. Therefore, we find it appropriate to remand this appeal for a determination on the merits. Before proceeding to the merits, the administrative judge should make findings as

whether those individuals had a motive to retaliate against the appellant. *See Dorney*, 117 M.S.P.R. 480, ¶¶ 14-15.

to whether the appellant has met his burden to nonfrivolously allege that the February 2020 disclosure and his July 3-4, 2020 OPR complaint were a contributing factor in any other exhausted personnel actions.[8]  If so, he should adjudicate those matters on the merits as well.

## ORDER

For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:                    _____

*Gina K. Grippando*

Gina K. Grippando
Clerk of the Board

Washington, D.C.

---

[8] The administrative judge should also determine whether the appellant has made nonfrivolous allegations that the allegedly retaliatory actions meet the definition of "personnel action" in 5 U.S.C. § 2302(a)(2).